## KNICKERBACKER *v.* BOUTWELL and others.

A purchaser of two city lots took an assignment of an old mortgage which included those and ten other lots. By the various mesne conveyances from the mortgagor, the two lots were subject to a portion of the mortgage as between them and three other of the twelve lots, and in common with those three, to a larger proportion of the mortgage as between them and the remaining seven lots. On a bill by such purchaser to foreclose the mortgage, and praying for a sale of the twelve lots;

*Held,* 1. That the charge upon the two lots being imposed by the recorded deeds and mortgages thereon, executed by those through whom the complainant derived his title; actual notice to him was of no consequence.

2. That as to so much of the mortgage as was at all events to be paid by the two lots, there was an absolute merger when the complainant received an assignment of the mortgage, and an extinguishment of so much of its amount. But that as to the residue thereof, (including the part for which his two lots were liable only

in the event of a deficiency in the three with which they were charged in the larger proportion,) there was no merger.

It appearing, upon holding the complainant's two lots liable for the sum primarily charged on them, that there was not one hundred dollars actually due and in arrear when the bill was filed, and there being no obstacle to a sale of the premises in parcels; the bill was dismissed on that ground.

The maturing of instalments during the pendency of the suit, so that at the hearing there was more than one hundred dollars in arrear to the complainant on the mortgage, does not aid the jurisdiction of the court, which must be determined by the state of things existing when the suit was commenced.

Albany, Dec. 23, 24, 1844; January 25, 1845.

THIS was a bill filed April 1st, 1843, to foreclose a mortgage executed by O. and P. Boutwell to John Gary, Jun., for $1600 on the first day of June, 1835; conveying a tract of ground in the fourth ward of the city of Troy, which was subsequently laid out into twelve city lots.

On the 17th of June, 1835, the Boutwell's conveyed in fee to Anthony Christian, a portion of the premises equal to five city lots, and Christian at the same time executed to them a mortgage on the whole, by which he agreed to pay one thousand dollars with interest of the mortgage to Gary. Christian's mortgage was recorded three days afterwards.

Christian conveyed three of the five lots at a subsequent date, to Bunnell and Boutwell, who on the 10th of November, 1836, conveyed two of the same to J. and J. Boyle, and received a mortgage in return, by which the Boyle's in respect of those two lots agreed to pay $720 with interest of the original mortgage to Gary. The title of the other of the three lots conveyed to Bunnell and Boutwell, remained in them or their grantees.

Christian retaining two of the five lots conveyed to him by the Boutwell's, a judgment was docketed against him on the 8th day of February, 1837, and on an execution issued thereon the sheriff sold the two to Chauncey P. Ives. Ives received a deed from the sheriff on the 3d day of September, 1839, and on the 3d of October, 1839, conveyed the two lots to the complainant.

On the same day that they conveyed to Christian, June 17, 1835, the Boutwell's sold and conveyed a parcel which afterwards became three lots, to Nathan Brownson; who executed to them a mortgage on the same, by which he agreed to pay $600

with interest on the original mortgage to Gary. This mortgage as well as the deed, were recorded.

One of these three lots, by sundry mesne conveyances, vested in the defendant, W. Johnson, one other was vested in the same manner in the defendant John Ash; and the third lot in the defendant Brooks.

Of the remaining four lots originally mortgaged, the Boutwell's conveyed three to the defendant Harvey Mosher, on the same day that they conveyed to Christian and Brownson. Mosher subsequently sold and conveyed two of the same to the defendants Moran and Manning, retaining the other lot.

There was one lot of the twelve which remained in the Boutwell's after the 17th of June, 1835, and its history was not traced; but there was no question raised in regard to it at the hearing.

Answers were put in by Mosher, Moran and Manning, and by J. and J. Boyle; setting forth the several conveyances, mortgages and agreements before mentioned, and insisting that there was a merger of the original mortgage in respect of the two lots owned by the complainant, and that the five lots conveyed to Christian and the three lots conveyed to Brownson, were primarily liable to pay the whole of that mortgage, in the proportions fixed by the respective subsequent mortgages. The answers also insisted that there was not one hundred dollars due and in arrear for principal and interest on the original mortgage, when the suit was commenced. The facts on this point will be found in the opinion.

The cause came on to be heard on the pleadings and proofs.

*J. Holmes*, for the complainant.

*J. D. Willard*, for the defendants, J. and J. Boyle, Ash and Johnson.

*C. D. Sheldon*, for Mosher, Moran and Manning.

THE ASSISTANT VICE-CHANCELLOR.—The complainant is the owner of two lots of the twelve into which the mortgaged premises have been divided in and by the various sales made

since the execution of the mortgage. His title was derived from Chauncey P. Ives, by a deed dated October 3, 1839. Ives obtained his title under a sale made by the sheriff, upon a judgment against Anthony Christian. The sheriff's deed was executed September 3, 1839, and conveyed all the right and title which Christian had on the 8th day of February, 1837.

Christian's title originated in a deed from Oliver and Phordice Boutwell, the mortgagors, dated June 17th, 1835, which deed conveyed five of the twelve lots mortgaged, including the two that came to the complainant. At the time of the execution of this conveyance, Christian executed to the Boutwell's a mortgage on the same five lots, by which he assumed the payment in respect of those lots, of one thousand dollars, part of the mortgage in question, with interest. The mortgage from Christian was recorded June 20th, 1835.

On the same day that they conveyed to Christian, the Boutwell's conveyed three other lots to N. Brownson, charged in the same manner with $600 of the mortgage in question; and three lots to Harvey Mosher, absolutely.

Several of the defendants have acquired titles under these conveyances.

I should state, that the deeds exhibited show, that the lands mortgaged were equal in extent to twelve lots, each twenty-five by one hundred feet, exclusive of the ground covered by Eighth-street; the deed to Christian conveyed land divisible into five such lots; and the sheriff's deed conveyed a parcel fifty feet by one hundred, which I have called two lots, and will designate as numbers 4 and 5. The complainant has therefore become the owner of two-fifths, (territorially) of the tract which was conveyed by the Boutwell's to Christian. And upon the testimony which I have already mentioned, he took the same charged with the payment of $400 with interest, on the mortgage in controversy, that being two-fifths of the amount assumed by Christian in respect of the whole five lots.

The defendants have produced a deed to J. and J. Boyle for two of those five lots, (viz. Nos. 8 and 9,) and a mortgage thereon executed by J. and J. Boyle, which prove, that as between the latter and the owner of the complainant's two lots,

they were to pay $720, and the two lots only $280, of the $1000 thus charged upon the five lots. In respect of all the other grantees of the mortgaged premises, the two lots stand liable to make good the whole sum of $1000 before mentioned.

It is of no consequence whether the complainant had actual notice of this charge or not. It was fastened upon the land by the recorded mortgage given by Christian in 1835, and all those deriving title under him, were subjected to that charge.

When the complainant took an assignment of the mortgage in question, the mortgage was merged in respect of the two lots whereof he then had the legal title, to the extent of the $280 of principal and the arrears of interest on that sum, which were at all events to be paid by those two lots. In the event of the two lots of Boyle proving insufficient to pay the $720 charged on them; the complainant's lots, together with the fifth lot charged by Christian (which he conveyed to Bunnell and Boutwell,) would still be liable to make good the $1000 charged on the five lots.

I do not think that there was any merger in equity, beyond the sum for which the complainant himself was primarily liable, as the owner of lots four and five. (*McKinstry* v. *Mervin*, 3 J. C. R. 466; *Milspaugh* v. *McBride*, 7 Paige, 509; *Skeel* v. *Spraker*, 8 ibid. 182.)

If there were to be a decree for a sale, it would conform to the principles which I have stated.

The defendants however, insist that there was not $100 of interest due when the bill was filed, and that it must be dismissed for that cause.

The bill was filed on the 1st of April, 1843, and claims that there was then due for interest $223 74.

The principal sum is payable in 1845, and the interest was payable annually on the first day of June. The complainant's allegation must therefore be tested by the unpaid interest which fell due on or before the 1st June, 1842. The mortgage was not assigned to the complainant till March, 1843; so that the merger of the $280 may be left out of view, and the case considered upon his liability to pay the interest on that amount.

The indorsements on the bond itself prove that only $109 20, remained unpaid. It remains to be seen whether the complainant was not his own debtor for a portion of this sum.

The interest is paid in full to June 1, 1839. Of the $112 interest which fell due on the 1st of June, 1840, $71 40 was paid on the 23d of June, and $21 on the 14th of August; both sums being indorsed on the bond as received of A. Bunnell, who was then an owner of lot seven, (the fifth Christian lot,) as shown by the documentary evidence. These payments left $19 60 in arrear, that is precisely the amount of interest which the complainant was then liable to pay in respect of his two lots.

The indorsements on the bond show the same state of things exactly, in regard to the interest that became due on the 1st of June, 1841.

Of that which was due on the 1st of June, 1842, Ash and Brooks paid each $21, thus discharging the interest on the $600 charged upon the three lots conveyed to Brownson, each of them owning one of those lots. This left unpaid the $70 interest, which was payable by the five Christian lots.

The indorsements on the bond show presumptively, that the complainant paid no part of the interest accrued since 1839 ; and inasmuch as he ought to have paid $19 60 in each year, it would thus appear that of the $109 20 in arrear, he ought to have paid $58 80 himself; and the amount really due, would be reduced to $50 40.

The testimony of Boutwell, if admitted proves that the complainant paid his share of interest for two years. This, if applied to the interest which accrued after June 1, 1839, would leave the sum of $89 60, only, as due and in arrear when this suit was commenced.

I am clear that the jurisdiction cannot be aided by the fact that more interest has become due during the pendency of the suit. The complainant must recover, if at all, on the state of things existing when the suit was commenced.

The point was distinctly presented in the answers, and the authorities are decisive that it is fatal to the suit. (2 R. S. 173, § 37. *Douw* v. *Shelden*, 2 Paige, 323 ; *Barton* v. *Forbore*, per Chancellor, August 16th, 1842, 2 Barbour's Abstract of Chancellor's Decisions, 59.)

I have not examined the question as to the competency of Boutwell as a witness. The documentary evidence is sufficient for the defence, without his testimony.

The bill must be dismissed with costs.